OPINION
{¶ 1} Thomas R. Mills, Jr. ("Thomas") appeals the July 9, 2002 judgment entry of the Trumbull County Court of Common Pleas, Domestic Relations Division, adopting the magistrate's decision designating Lorri Jean Mills ("Lorri") as residential parent and legal guardian of the parties' minor children. For the reasons set forth below, we affirm the decision of the trial court in this matter.
 {¶ 2} Thomas and Lorri were married on May 19, 1979. Three children were born as issue of their marriage: Heather Mills Slusher ("Heather"), an emancipated adult, Holly Mills ("Holly"), now also an emancipated adult, and Heidi Mills ("Heidi"), a minor child born October 31, 1986. During the marriage, Lorri was in charge of household finances and getting the children to school.
 {¶ 3} In 2000, Daniel Pascute ("Pascute") moved into a trailer on the marital residence and subsequently into the marital residence. Thomas filed a complaint for divorce on April 30, 2001. The parties separated and Lorri and the minor children moved from the marital residence into the residence of Lorri's mother. The magistrate conducted a hearing regarding the allocation of parental rights and responsibilities on December 6, 2001, March 19, 2002, and March 21, 2002.
 {¶ 4} As evinced by the magistrate's findings, Thomas presented evidence of Lorri's sexual relationship with Pascute. Thomas also proffered evidence of Holly's and Heidi's tardiness and absences from school, as well as evidence that Lorri lived at three different residences during the pendency of the divorce. Thomas purportedly attempted to introduce testimony from Jacki Fark ("Fark"). The magistrate allegedly ruled that Fark's testimony constituted inadmissible hearsay.
 {¶ 5} After the conclusion of the last evidentiary hearing on March 21, 2002, but prior to the magistrate rendering his decision, Thomas moved for a hearing to present additional evidence. Thomas moved to admit evidence regarding his observance of Pascute with Lorri and the children on one occasion after the last hearing. Thomas also sought to admit Holly's diary that he claims to have discovered after the conclusion of the hearings. In his motion, Thomas stated that the diary would be "enlightening about the core issues in the custody aspect of this case," without detailing what was contained therein. Even in his brief to this court, Thomas only states that the diary is "illustrative of the relationship of Holly Mills and Heidi Mills with Daniel Pascute," again without any further detail.
 {¶ 6} The magistrate denied Thomas' motion for a hearing to present additional evidence on May 8, 2002. On May 15, 2002, Thomas filed a motion to set aside the magistrate's order. The trial court overruled Thomas' motion and adopted the magistrate's decision denying Thomas' motion for a hearing. The magistrate issued his decision designating Lorri as residential parent and legal guardian of the parties' minor children on June 20, 2002. The magistrate cited to the following factors in making his determination:
 {¶ 7} "* * * The children expressed without reservation to the GAL, their wish to reside in the residence with their mother.
 {¶ 8} "* * * The children expressed without reservation to the GAL that they do not wish to live with their father and only wish to visit their father on a very restricted basis.
 {¶ 9} "* * * The children have been interviewed en-camera [sic] by the Magistrate with their Guardian Ad Litem present and they are quite competent to express their wishes and concerns and did so without reservation. These children desperately wish to live with their mother.
 {¶ 10} "* * * The children are now adjusted to their current home.
 {¶ 11} "* * * The children are currently adjusted to their school.
 {¶ 12} "* * *
 {¶ 13} "* * * The children and [Lorri] resided in three (3) different locations since the inception of his divorce action. The children now have their own bedrooms at their latest residence with their mother.
 {¶ 14} "* * *
 {¶ 15} "* * * [Thomas] testified that [Lorr] and Mr. Pascute began a love affair at the Mills residence. However, [Lorri] denies this affair. Furthermore, testimony from both sides was contradictory regarding an affair and sexual relations between Mr. Pascute and [Lorri].
 {¶ 16} "* * *
 {¶ 17} "* * * Daniel Pascute continues on a very limited basis to visit the residence of [Lorri], at times spending the night there.
 {¶ 18} "* * * [Lorri] has not hindered and has attempted to facilitate companionship rights with the natural father. [Thomas] would not hinder and would attempt to facilitate companionship rights with the mother if he were granted custody of these children.
 {¶ 19} "* * * Neither party has been convicted of any crimes involving abuse, negligent, dependency or domestic violence with the minor children.
 {¶ 20} "* * * Since the divorce action has been filed, [Thomas] has not enjoyed a consistent relationship of visitation with his two minor daughters.
 {¶ 21} "* * * Defendant readily admits to incurring approximately $40,000.00 of credit card debt. However, she has been making payments on this debt without contribution from [Thomas].
 {¶ 22} "* * * [Thomas] further admitted under cross-examination that he has no interaction whatsoever with the children nor does [sic] any members of his family enjoy a relationship with the children.
 {¶ 23} "* * * [Thomas] revealed that the summer of 2001 was the last time he spent any time together with Heidi.
 {¶ 24} "* * * The children have a close relationship with [Lorri's] parents and her side of the family.
 {¶ 25} "* * * The GAL has conducted a thorough investigation of all issues herein and highly recommends that [Lorri] be designated residential parent of these children."
 {¶ 26} Thomas filed objections to the magistrate's decision on June 28, 2002. The trial court overruled Thomas' objections and adopted the magistrate's decision on July 9, 2002. Thomas filed this appeal on August 5, 2002. Pursuant to App.R. 9(C), Thomas filed a statement of the evidence or proceedings in this court on October 17, 2002, detailing Heather's testimony from the December 6, 2001 hearing and Thomas' unsuccessful attempt to illicit testimony from Fark concerning statements made by the children. Since the App.R. 9(C) statement was not submitted to the trial court for approval, but instead was filed in this court, the statement and the filing thereof fail to comport with the requirements of App.R. 9(C). See App.R.9(C) ("If * * * a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means * * *. The statement shall be served on the appellee no later than twenty days prior to the time for transmission of the record pursuant to App.R. 10 * * *. The statement * * * shall be forthwith submitted to the trial court for settlement and approval. The trial court shall act prior to the time for transmission of the record pursuant to App.R. 10, and * * * the statement shall be included by the clerk of the trial court in the record on appeal."). Failure to follow the requirements of App.R. 9(C) precludes this court from considering the statement as part of the record. Bishop Park Towers v. Sefcik, 11th Dist. No. 2001-L-137, 2002-Ohio-2816, at ¶ 14 (citation omitted). Thus, we cannot consider the testimony summarized in Thomas' App.R. 9(C) statement as part of the record.[1]
 {¶ 27} In this appeal, Thomas raises the following assignments of error:
 {¶ 28} "[1.] The trial court's order designating Appellee as residential parent was against the weight of the evidence, contrary to law and an abuse of discretion.
 {¶ 29} "[2.] The trial court erred to the prejudice of Appellant in not considering and addressing the presence and influence of Daniel Pascute on the best interests of the parties' children.
 {¶ 30} "[3.] The trial court abused its discretion in not conducting a hearing on the content of Holly Mills' diary in that it contained material pertinent to the children's relationship with Daniel Pascute and was discovered after the March 21, 2002, proceeding and before the rendering of a decision.
 {¶ 31} "[4.] The trial court erred to the prejudice of Appellant in not allowing testimony by Jacki Fark of the admissions by the minor children of their relationship with Daniel Pascute.
 {¶ 32} "[5.] The trial court erred and abused its discretion to the prejudice of Appellant in not certifying this case to the Juvenile Court pursuant to R.C. 3109.04(D)(2).
 {¶ 33} "[6.] The trial court's decision that found Appellant not making contributions for payment of debt incurred by Appellee and that found the children attended school with their mother (Appellee) was against the weight of the evidence."
 {¶ 34} In his first assignment of error, Thomas argues that the trial court's decision designating Lorri as the residential parent was not in the best interests of the minor children because Lorri is irresponsible, unstable, a poor disciplinarian, and a possessor of bad judgment. Thomas argues that these traits are evidenced by the $40,000 in credit card debt incurred during the marriage, Lorri residing in three locations after departing the marital residence, the children's tardiness and absences from school, and Lorri "taking a lover one-half her age."
 {¶ 35} "It has long been a recognized rule of law that for a reviewing court to overturn a trial court's determination of custody, the appellate court must find that the trial court abused its discretion."Masters v. Masters, 69 Ohio St.3d 83, 85, 1994-Ohio-483. An abuse ofdiscretion consists of more than an error of law or judgment. Rather, itimplies that the court's attitude is unreasonable, arbitrary orunconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169 (citationomitted). Reversal, under an abuse of discretion standard, is notwarranted merely because appellate judges disagree with the trial judgeor believe the trial judge erred. Id. Reversal is appropriate only if theabuse of discretion renders "the result * * * palpably and grosslyviolative of fact and logic [so] that it evidences not the exercise ofwill but perversity of will, not the exercise of judgment but defiancethereof, not the exercise of reason but rather of passion or bias." Statev. Jenkins (1984), 15 Ohio St.3d 164, 222 (citation omitted).
 {¶ 36} Further, an award of custody will not be reversed by areviewing court as being against the manifest weight of the evidence whenit is supported by a substantial amount of competent and credibleevidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23. In reviewing amanifest weight argument, the trial court's "determination of credibilityof testimony and evidence must not be encroached upon by a reviewingtribunal * * *." Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 81. Thus, there is a presumption that the findings offact as determined by the trier of fact are correct. State ex rel. Pizzav. Strope (1990), 54 Ohio St.3d 41, 46 (citation omitted).
 {¶ 37} "[T]he `best interest of the child' should be the overridingconcern in any child custody case." Miller v. Miller (1988),37 Ohio St.3d 71, 75 (citations omitted). "In determining the bestinterest of a child * * * the court shall consider all relevant factors,including, but not limited to:" (1) the parents wishes; (2) the child'swishes; (3) the child's relationship with his or her parents, siblings orany other person who may affect the child; (4) the child's adjustment tohis or her home, school, and community; (5) the parties' mental andphysical health, (6) which parent will facilitate visitation or parentingrights of the other parent; (7) a parent's failure to make child supportpayments; (8) whether the child was abused or neglected by either parent,(9) whether the residential parent has denied the other parent his or hervisitation or parenting rights; and (10) whether either parent has movedout of state or intends to move out of state. R.C. 3109.04(F)(1).
 {¶ 38} In considering the best interest of the child, a court mayexamine a parent's lifestyle, but only to the extent that it has a directadverse impact on the child. See Anderson v. Anderson, 147 Ohio App.3d 513,2002-Ohio-1156, at ¶ 66 ("[I]n making a custody determination, the`direct adverse impact' test dictates that a court's inquiry into themoral conduct of a parent should be limited to the adverse effects ofsuch conduct on the child."); Inscoe v. Inscoe (1997), 121 Ohio App.3d 396,414 ("[A] parent's conduct has no relevance to the allocation of parentalrights and responsibilities in the absence of proof that the parent'sconduct has adversely affected the child."); Rowe v. Franklin (1995),105 Ohio App.3d 176, 180 ("The direct adverse impact test allows thecourt to consider moral principles, but only in relation to the direct orprobable effect of the parent's conduct on the child."); Whaley v. Whaley(1978), 61 Ohio App.2d 111, 119.
 {¶ 39} Apparently Thomas presented evidence that might call intoquestion some of Lorri's decisions and conduct, but, absent atranscript, there is no demonstration of any direct adverse impact thesedecisions and conduct had on the children. In making his decision, themagistrate set out a clear and extensive summarization of his findingsand found no direct adverse impact on the children. The magistrate alsoproperly considered all other relevant factors enumerated in R.C.3109.04(F)(1) in making his decision.
 {¶ 40} The magistrate's extensive findings and weighing of relevantfactors demonstrates that there was evidence before the magistrateregarding his decision designating Lorri as the residential parent. Witha silent record before us, we cannot find that the trial court's decisionwas against the manifest weight of the evidence, nor can we find that thetrial court abused its discretion in determining that the best interestof the children would be served by granting residential custody toLorri.
 {¶ 41} For these reasons, Thomas' first assignment of error isoverruled.
 {¶ 42} In his second assignment of error, Thomas argues that the trial court never addressed "the effect of the presence of Daniel Pascute" on the best interest of the children as required by R.C.3109.04(F)(1)(c).
 {¶ 43} "As a reviewing court, we can assume that the trial court considered all competent, credible evidence in the record and also applied all relevant statutory requirements in reaching its decision."Waggoner v. Waggoner (1996), 111 Ohio App.3d 1, 6, citing Sayre v.Hoelzle-Sayre (1994), 100 Ohio App.3d 203, 212. In this case, the magistrate's report makes several references regarding Pascute's presence in the children's lives. Further, the magistrate's order specifically indicated that Pascute continues to have very limited contact with the children. Thus, the record clearly reflects that the magistrate did consider Pascute's presence when making his decision.
 {¶ 44} Moreover, the trial court's decision will not be overruled unless the claimed error can be demonstrated from the record. In this case, the claimed error is not demonstrated by the record and, thus, we presume there was competent and credible evidence to support the magistrate's decision. The trial court, therefore, did not abuse its discretion in adopting the decision.
 {¶ 45} Thomas' second assignment of error is, therefore, overruled.
 {¶ 46} Thomas argues in his third assignment of error that "a trial court should conduct hearings on newly discovered evidence, when the evidence is discovered before rendering of a judgment."
 {¶ 47} Civ.R. 53(E)(4)(b) provides that "[t]he court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration." (Emphasis added). In this case, however, Thomas did not attempt to introduce new evidence in his submission of objections to the magistrate's decision and, therefore, does not fall within the parameters of Civ.R. 53(E)(4)(b). His motion must simply be taken as a motion to submit new evidence after the conclusion of the magistrate's proceedings, but prior to the report being issued.
 {¶ 48} "It is within the discretion of the trial court to permit either party to introduce evidence after both sides have rested." Huebnerv. Miles (1993), 92 Ohio App.3d 493, 504, citing Ketcham v. Miller
(1922), 104 Ohio St. 372, paragraph three of the syllabus. Moreover, a trial judge possesses the inherent power to regulate court proceedings.State ex. rel. Butler v. Demis (1981), 66 Ohio St.2d 123, 128. Thus, a ruling by the court that affects trial conduct, such as limiting the submission of evidence, will not be overturned "unless the complaining party demonstrates a prejudicial abuse of discretion." Holm v. Smilowitz
(1992), 83 Ohio App.3d 757, 771-772. Presumably the same analysis and rationale would apply to magistrate proceedings.
 {¶ 49} Thomas has failed to demonstrate what the additional evidence he proposed to submit would have shown and what potential prejudicial effect it would have on the outcome of this matter. Rather, Thomas simply claimed that the evidence was discovered after the conclusion of the proceedings and would be relevant. This is not sufficient to support Thomas' request to submit additional evidence. See Id. at 772; see, also, Staggs v. Staggs (1983), 9 Ohio App.3d 109, 111. Although we recognize that Thomas may have been concerned about protecting the privacy of his daughter, he failed to take any measures to demonstrate the nature and prejudicial effect of the evidence he moved to admit while still protecting his daughter's privacy, i.e. submitting the diary under seal. Thomas fails to make a specific proffer of the exact nature of this proposed evidence. Instead, he made general conclusory statements regarding the contents of the diary. This court, therefore, cannot conclude that the magistrate's, and later the court's, decision denying Thomas' request to introduce new evidence constituted an abuse of discretion.
 {¶ 50} Thomas claims that his motion was initially granted, that a hearing date was set for May 7, 2002, and that, on the day of the hearing, the hearing was cancelled. The record fails to reflect Thomas' assertion. A review of the record shows that Thomas' motion was never granted. In fact, the magistrate denied the motion on May, 7, 2002,[2]
the date the hearing was purportedly to be conducted. The only item in the record that could possibly support Thomas' claim is a "Notice of Hearing" setting a hearing date of May 7, 2002. The notice is signed by Thomas' attorneys rather than the court. Moreover, the notice is on Thomas' attorney's letterhead and was time stamped April 1, 2002, the same day Thomas' filed his motion. This notice fails to demonstrate that the court ever granted the motion or set a date for the hearing.
 {¶ 51} Thus, Thomas' third assignment of error is overruled.
 {¶ 52} In Thomas' fourth assignment of error, he argues that "Evidence Rules 803(2) and (3) and 804(B)(3) allow the admission of a declarant's hearsay statements when the declarant is the object of a custody proceeding and the statements concern the declarant's questionable relationship with a third person that effects the best interests of the child/declarant."
 {¶ 53} Evidentiary rulings are within the discretion of the trial court and will not be overturned absent an abuse of discretion. State v.Long (1978), 53 Ohio St.2d 91, 98.
 {¶ 54} Evid.R. 803(2) provides a hearsay exception for excited utterances; Evid.R. 803(3) provides a hearsay exception for statements of the declarant's then existing state of mind; and Evid.R. 804(B)(3) does not exclude statements against interest. A transcript is necessary, however, to determine how Thomas sought to admit Heidi's and Holly's statements and whether the proper foundation was laid to do so. There is no record to support Thomas' claim that Heidi's and Holly's statements qualify under any hearsay exception because we have no record regarding these statements. Thus, we cannot find that the trial court abused its discretion in ruling that the statements were inadmissible hearsay. Thomas' fourth assignment of error is, therefore, overruled.
 {¶ 55} Thomas argues in his fifth assignment of error that the trial court should have certified the case to the juvenile court if it determined that the best interest of the children would not be served by designating either party as residential parent. Thomas argues that the trial court was not left with an "either-or" choice.
 {¶ 56} Although Thomas' statement of law regarding certifying the case to juvenile court when the court determines neither party should be designated as the residential parent is correct, see R.C. 3109.04(D)(2) ("If the court finds * * * that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child or certify a copy of its findings * * * to the juvenile court for further proceedings * * *."), "[a]s a reviewing court, we can assume that the trial court * * * applied all relevant statutory requirements in reaching its decision." Waggoner, 111 Ohio App.3d at 6. Without a record, we presume the trial court had knowledge of and applied the relevant statutory authority in determining that the children's best interest would be served by designating Lorri as the residential parent. Thus, since the trial court designated Lorri the residential parent, the court had no reason to apply R.C. 3109.04(D)(2).
 {¶ 57} Since we determined above that the trial court did not abuse its discretion in designating Lorri as residential parent, Thomas' fifth assignment of error is overruled.
 {¶ 58} In his sixth assignment of error, Thomas argues that the magistrate's decision contained inaccurate findings. Specifically, Thomas claims the following findings are inaccurate:
 {¶ 59} "* * * [Lorri] has been making payments on [the credit card] debt without contribution from [Thomas]."
 {¶ 60} "The Court finds that the children have now adjusted to their mother's home and that they attend school with their mother * * *."
 {¶ 61} Although the trial court ordered Thomas to pay $600 per month to the credit service to reduce the marital debt, the record does not disclose what payments, if any, were made by Thomas pursuant to this order. Moreover, even if we found that these two findings were inaccurate or misstatements of fact, they would not amount to reversible error. Thomas even admits that "the inaccurac[ies] do not constitute reversible error." Thus, Thomas' sixth assignment of error is overruled.
 {¶ 62} For the foregoing reasons, we conclude that the trial court did not abuse its discretion in adopting the magistrate's decision designating Lorri as residential parent. We further conclude that the trial court did not abuse its discretion in adopting the magistrate's decision denying Thomas' motion for a hearing to submit additional evidence. Thus, we hold that Thomas' assignments of error are without merit. The decision of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.
Judgment affirmed.
Donald R. Ford, P.J., and Judith A. Christley, J., Concur.
[1] The App.R. 9(C) statement would not have altered our decision in this matter.
[2] The judgment entry denying Thomas' motion was signed by the magistrate on May 7, 2002, but was not filed until May 8, 2002.