OPINION
{¶ 1} This appeal stems from a child custody case in which the Portage County Court of Common Pleas granted appellee, Thomas G. Dexter, II, custody of his now five-year old daughter, Giovanna Nevada Dexter ("Giovanna"). Appellant, Camille R. Dexter, Giovanna's mother, appeals the trial court's May 1, 2006 decision. Appellant claims that the trial court abused its discretion in failing to comply with the procedural requirements of Civ.R. 53(E)(4)(c), regarding the interim custody order, and erred in *Page 2 
interjecting its own biases regarding appellant's lifestyle and religious choices when making its custody determination. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} The parties were divorced on October 10, 2003, in Potter County, Pennsylvania after completing, by themselves, divorce forms they had received through the mail. The issues of child custody and child support were not incorporated into the divorce decree. Instead, the parties agreed verbally that their daughter, Giovanna, would remain in the custody of appellant, who resided in Portage County, Ohio, and that appellee, who lived in Red Lion, Pennsylvania, would have liberal visitation rights. To accommodate visitation, the parties met in Pittsburgh, Pennsylvania, where appellee's parents lived. At first, visitation was more frequent, occurring at least twice a month. However, by November 2004, communication broke down, and the parties came to a standstill regarding visitation. At that point, appellee stopped paying appellant the agreed upon $ 300 per month child support.
 {¶ 3} On February 17, 2005, appellee filed a number of motions in the Portage County Court of Common Pleas, including a Motion to Register Foreign Divorce Decree and a Motion to Establish Shared Parenting or in the Alternative to Set a Visitation Schedule. On February 25, 2005, the Portage County Court of Common Pleas assumed jurisdiction of the matter and registered the foreign divorce decree. On April 14, 2005, the trial court held a temporary hearing regarding child custody and support before a magistrate. The magistrate named appellant the temporary residential parent and ordered appellee to pay appellant $ 527.96 in monthly child support. The court also granted appellee monthly visitation with Giovanna in Ohio. Pursuant to appellee's *Page 3 
request, the trial court appointed guardian ad litem Pamela S. Harris to represent Giovanna's interests.
 {¶ 4} On April 27, 2005, appellee filed a Motion for Reallocation of Parental Rights and Responsibilities asking that he be awarded custody of Giovanna. On October 31, 2005, a magistrate conducted a custody hearing. After considering the testimony of several witnesses, including both parties, the guardian ad litem, the maternal and paternal grandparents, appellant's live-in boyfriend, her roommate, appellee's spouse and a former neighbor of the parties, the magistrate found that it was in the best interest of the child that appellee be named the residential parent. The magistrate told the parties in open court that Giovanna was to be transferred to appellee on November 4, 2005. The order was journalized on November 9, 2005.
 {¶ 5} When appellant refused to turn Giovanna over to appellee, he filed a contempt motion on November 7, 2005. Appellant then filed objections to the magistrate's order, seeking to stay the execution of the magistrate's decision. In response, appellee filed a motion for an interim order under Civ.R. 53(E)(4)(c) to immediately enforce the magistrate's decision, notwithstanding the filing of objections. The trial court granted appellee's motion for an interim order on November 14, 2005, finding that an immediate order was necessary in order to prevent irreparable harm.
 {¶ 6} On November 21, 2005, appellant retained new counsel, who entered an appearance in the case and filed supplemental objections and a motion to vacate the magistrate's decision and interim order. A hearing was set for March 9, 2006. However, on March 1, 2006, appellant filed a motion to continue the hearing on the ground that counsel had yet to receive a transcription of the court's October 31, 2005 *Page 4 
hearing, even though he had requested a partial transcript and had asked the court reporter to provide him with an estimate of the transcription cost. On March 6, 2006, appellant filed a motion for immediate return of the child. The trial court concluded that since no transcript had yet been filed, it was in the best interest of the child that she remained in the custody of appellee. The court also stated that it would not rule on appellee's objections or on the merits of her motion for immediate return of the child until a transcript was filed with the court. Ultimately, after appellant's counsel paid the required deposit, the transcript of the October 31, 2005 hearing was transcribed and filed with the court on April 4, 2006.
 {¶ 7} On April 14, 2006, the trial court conducted a hearing on appellant's objections to the magistrate's report and on her motion for return of the child. After considering the evidence, the trial court, in an order dated May 1, 2006, overruled appellant's objections and motion and ordered that appellee be awarded custody of Giovanna. From this judgment, appellant filed a timely appeal and raises the following two assignments of error for our consideration:
 {¶ 8} "[1.] The Trial Court abused its discretion and acted contrary to law when it entered an Interim Order granting custody to Father pending objections.
 {¶ 9} "[2.] The Trial Court abused its discretion when it considered Mother's religion, lifestyle choices and sexual orientation absent probative evidence that these choices or orientation had an actual, adverse impact on the safety or best interests of the child, and/or absent any probative evidence that those practices adversely affected the mental or physical health of the child."
 {¶ 10} Standard of Review *Page 5 
 {¶ 11} In reviewing matters involving the allocation of parental rights and responsibilities of minor children, a trial court is vested with broad discretion; thus, a trial court's decision will be reversed only upon a showing of an abuse of discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 74; Davis v. Flickinger (1997), 77 Ohio St.3d 415,418. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. A reviewing court should not reverse a decision simply because it holds a different opinion as to the credibility of witnesses and evidence submitted. Davis at 418, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80-81. Deference to the trial court on matters of credibility "is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis at 418. With this standard of review in mind, we now consider the merits of appellant's arguments.
 {¶ 12} Requirements of Civ.R. 53(E)
 {¶ 13} In her first assignment of error appellant contends that the trial court abused its discretion in granting appellee temporary custody of Giovanna in its interim order. In particular, appellant argues that the interim order was void because the trial court failed to comply with the time requirements of Civ.R. 53(E)(4)(c); that the trial court erred in failing to conduct a hearing or stay the proceedings prior to entering its interim order; and that the order was contrary to law because there was no showing of irreparable harm. *Page 6 
 {¶ 14} Civ.R.53 (E)(4)(c), in effect at the time of the lower court proceedings,[1] set forth the following procedure a trial court must follow when it makes an interim order stemming from a magistrate's decision:
 {¶ 15} "Permanent and interim orders. The court may adopt a magistrate's decision and enter judgment without waiting for timely objections by the parties, but the filing of timely written objections shall operate as an automatic stay of execution of that judgment until the court disposes of those objections and vacates, modifies, or adheres to the judgment previously entered. The court may make an interim order on the basis of a magistrate's decision without waiting for or ruling on timely objections by the parties where immediate relief is justified. An interim order shall not be subject to the automatic stay caused by the filing of timely objections. An interim order shall not extend more than twenty-eight days from the date of its entry unless, within that time and for good cause shown, the court extends the interim order for an additional twenty-eight days."
 {¶ 16} Pursuant to the express language of Civ.R. 53(E)(4)(c), an interim order is valid for a limited period of time, for twenty-eight days. At the end of the twenty-eight day period, the interim order may be extended by the trial court for one additional twenty-eight day period.[2] In this case, the trial court entered its interim order on November 14, 2005, and did not extend the order for an additional twenty-eight days. Rather, the trial court allowed Giovanna to remain in the custody of appellee beyond the *Page 7 
expiration of the twenty-eight day period and then, following a hearing on appellant's objections and other matters, entered its final order on May 1, 2006, in which it granted appellee custody of Giovanna.
 {¶ 17} It is undisputed that the trial court should have entered a final order prior to the expiration of the twenty-eight day period, and that the trial court failed to comply with the technical requirements of Civ.R. 53(E)(4)(c). However, as both parties recognize, the trial court could not enter a final order and could not conduct a hearing on appellant's objections until it was presented with a transcript of the October 31, 2005 original determination of custody hearing. Appellant contends that because the transcript was not produced in a timely fashion, her rights were compromised. The record reflects confusion over exactly why the transcript was not produced. Apparently, the delay in the transcription stems from a miscommunication between the court reporter and appellant's attorney regarding the fact that appellant needed to tender a deposit to the court reporter in order for the record to be transcribed. On March 2, 2006, appellant paid the court reporter the deposit, and the record was produced and filed with the court on April 4, 2006.
 {¶ 18} What appellant fails to recognize is that whether the delay was caused by miscommunication between her attorney and the court reporter is immaterial. As the objecting party, it was incumbent upon appellant to provide the trial court with the transcript. (Civ.R. 53(E)(3)(c).)[3] Although appellant's attorney attempted to mitigate the situation by filing motions to continue the hearing until the transcript was prepared and *Page 8 
by moving the court to appoint a court reporter to expedite the transcription process, these actions do not relieve her of her duty to ensure that the record was in fact prepared in a timely fashion. Cf.,Ludlow v. Ludlow, 11th Dist. No. 2006-G-2686, 2006-Ohio-6864, at ¶ 18. Under these circumstances, appellant should not be allowed to assert that the delay in the court's entering its final judgment prejudiced her, where that delay was attributed to her own failure to timely provide the court with a record. Although the court should have complied with the technical requirements of Civ.R. 53(E)(4)(c), under the facts of this case, where the delay was attributed to appellant's failure to ensure that the transcript was made part of the record, we are unwilling to hold that the court's delay and failure to comply with the time requirements of Civ.R. 53(E)(4)(c) constituted an abuse of discretion.
 {¶ 19} Appellant also maintains that the trial court abused its discretion in entering the interim order without staying the proceedings or without articulating reasons why the order was necessary to prevent irreparable harm. In support of appellee's motion, appellee attached his attorney's affidavit, which averred that an interim order was necessary to "provide the immediate relief that is justified under the circumstances" or else there would be "irreparable harm to the minor child." Appellee should have stated with more specificity the reasons why immediate relief was necessary, and an affidavit of appellee rather than his attorney would have been preferable. However, since the trial court ultimately decided the matter of custody and overruled appellant's objections, the issue regarding temporary custody is either deemed moot or constitutes harmless error. Carter v. Carter (Oct. 20, 1999), 3d Dist. *Page 9 
No. 16-99-02, 1999 Ohio App. LEXIS 4892, at 14; Shoff v. Shoff (June 30, 1998), 10th Dist. No. 97APF10-1377, 1998 Ohio App. LEXIS 3004, at 10.
 {¶ 20} Appellant's first assignment of error is without merit.
 {¶ 21} Best Interest of the Child
 {¶ 22} In her second assignment of error, appellant challenges the order designating appellee the residential and custodial parent of Giovanna. In particular, appellant maintains that the trial court abused its discretion in considering her lifestyle choices, religion and sexual orientation in making this custody determination where there was no probative evidence that these practices adversely affected the mental or physical health of the child.
 {¶ 23} In any child custody case, the trial court's paramount concern is determining what will be in "the best interest of the child."Miller, supra at 8.; Rowe v. Rowe (Dec. 17, 1999), 11th Dist. Nos. 98-L-073 and 98-L-163, 1999 Ohio App. LEXIS 6122, at 7. In determining the best interest of the child, the trial court must consider all relevant factors, including, but not limited to, the following statutory factors listed in R.C. 3109.04(F)(1): (1) the wishes of the parents; (2) the wishes of the child, if expressed to the court; (3) the child's relationship with the parents, siblings, and others who may significantly affect the child's best interest; (4) the child's adjustment to home, school, community; (5) the mental and physical health of all parties; (6) the parent most likely to honor and facilitate court-approved parenting, visitation, and companionship rights; (7) arrearages of child support; (8) prior criminal charges involving actions of the parent toward the spouse or the child; (9) the denial of visitation; and (10) the residency of the parents. Id. *Page 10 
 {¶ 24} Essentially, appellant argues that reversal is necessary because the trial court's decision was based almost entirely upon its disapproval of her lifestyle choices, religion and sexual preferences. Appellant maintains that in addition to consideration of this evidence, the only statutory factor the court considered was regarding which parent would better facilitate visitation.
 {¶ 25} Contrary to appellant's position, a trial court need not address every factor, only those relevant factors that affect the best interest of the child. Chavez v. Sanderson-Chavez (Mar. 31, 1999), 11th Dist. No. 98-L-037, 1999 Ohio App. LEXIS 1432, at 20. Moreover, in the absence of evidence to the contrary, it is presumed that the trial court considered the relevant factors. Wood v. Wood (Mar. 30, 2001), 11th Dist. No. 2000-A-0027, 2001 Ohio App. LEXIS 1559, at 3.
 {¶ 26} Consideration of Statutory Factors
 {¶ 27} A review of the trial court's findings of fact and conclusions of law demonstrates that the court considered relevant statutory factors and did not base its opinion entirely on her lifestyle choices, religion and sexual preferences, as appellant suggests. Specifically, in rendering its decision, the court considered the wishes of the parents and discussed the relationship Giovanna had with both her parents and grandparents.
 {¶ 28} The court found that while Giovanna was close to both sets of grandparents, she interacted better with appellee than with appellant. This finding was based on the guardian ad litem's testimony and report. The guardian ad litem, who was appointed by the court to represent and advocate for the best interest of Giovanna, had the opportunity to personally observe how the parties interacted with Giovanna. The *Page 11 
guardian ad litem noted a marked contrast between how Giovanna behaved with appellant. The guardian ad litem testified that Giovanna was happy to be with appellee, that she climbed on his lap and kissed him, and that her father spoke to her as she played with a toy. The guardian ad litem described their relationship as "loveable." In contrast, the guardian ad litem testified that Giovanna had to be coerced into coming into her office with appellant, and that Giovanna did not acknowledge her mother, but instead sat and played with a toy alone.
 {¶ 29} The court also considered the residency of the parties and the fact that appellee had stopped making child support payments for the period he was denied visitation, which the court did not condone. In addition to these factors, the court discussed the factor of who would better facilitate visitation.
 {¶ 30} With respect to this issue, appellant admitted during her testimony that she denied appellee visitation with Giovanna for a period of seven months and that she changed her phone number to an unlisted number without providing appellee or his parents the new, unlisted number. In addition, appellant admittedly refused to accept any gifts appellee sent to Giovanna. The guardian ad litem testified that she was concerned with appellant's refusal to honor appellee visitation rights and that, in her opinion, appellee would be the most likely parent to facilitate visitation, and that it would be in the child's best interests if appellee was named the custodial parent. The court recognized that since the interim order appellant had complied with visitation, but nevertheless agreed that appellee would be more likely to facilitation visitation. The record clearly demonstrates that the trial court did consider the relevant statutory factors. *Page 12 
 {¶ 31} Consideration of Other Factors
 {¶ 32} With respect to the trial court's consideration of appellant's lifestyle choices, religion and sexual preferences, consideration of these choices is not per se an abuse of discretion. Such evidence may be considered to the extent it has a direct adverse impact on the child. See Pater v. Pater (1992), 63 Ohio St.3d 393, paragraph one of the syllabus; In Re: Faulhaber (June 28, 2002), 11th Dist. No. 2001-P-0110, 2002 Ohio App. LEXIS 3362, at ¶ 29; Anderson v. Anderson (2002), 147 Ohio App.3d 513, 524. Thus, the court can consider the moral conduct of the parent as it relates to the direct or probable effect on the child.Mills v. Mills, 11th Dist. No. 2002-T-0102, 2003-Ohio-6676 at ¶ 38.
 {¶ 33} In this case, appellant admitted, both in her testimony and through her writings in on-line blogs, that she practiced sado-masochism, was a bisexual and a pagan.[4] Her boyfriend corroborated these practices and beliefs. Although appellant denied using illicit drugs, her on-line blogs contain several references to drug usage. In her Myspace writings, appellant stated that she was on a hiatus from using illicit drugs during the pendency of these proceedings, but that she planned on using drugs in the future. She also said that she would use drugs in her home if Giovanna was sleeping. The court also considered the testimony of appellee, his wife, and the guardian ad litem who expressed their concern over Giovanna residing with appellant, considering these lifestyle choices. *Page 13 
 {¶ 34} After hearing the evidence, the court considered the probable effect some of appellant's personal choices would have on Giovanna. For instance, with respect to appellant's drug usage while Giovanna was asleep, the court noted the negative consequences or impact such drug usage would have on Giovanna if she awoke from her sleep. Based on the evidence presented, the trial court, while recognizing the right of appellant and her boyfriend to engage in this particular lifestyle, nonetheless, found that Giovanna's best interests could be adversely affected by this lifestyle.
 {¶ 35} The fact that the trial court considered appellant's personal choices and expressed concern over these choices does not warrant reversal under the circumstances of this case where the court's decision was based on consideration of other relevant factors. Therefore, even if we were to find that the court improperly considered some of the evidence regarding appellant's lifestyle choices, we are unwilling to find an abuse of discretion where there are a number of other findings that support the trial court's decision and where the court considered several other factors in making its custody determination.
 {¶ 36} In urging reversal, appellant contends that this case is analogous to the Pater, supra, decision. However, in Pater, the trial court's award of custody to the father was based solely on the fact that the mother was a Jehovah's Witness. Thus, she was denied custody because of her religious affiliation. Both parents were deemed equally competent to care for their child and there was no other evidence finding in favor of the father. The Supreme Court of Ohio reversed the trial court's decision, finding that it was grounded in religious bias. Here, the facts are distinguishable. Unlike Pater, the trial court's decision was not based entirely on its biases or beliefs regarding appellant's *Page 14 
personal choices. Rather, the decision was made after the court considered other relevant factors that supported its determination that it was in the best interest of the child that appellee be named the custodial parent. Appellant's reliance on Pater is therefore misplaced.
 {¶ 37} Appellant's second assignment of error lacks merit.
 {¶ 38} For the foregoing reasons, we hold that the trial court did not abuse its discretion in granting appellee custody of the parties' child. The judgment of the trial court is affirmed.
CYNTHIA WESTCOTT RICE, P.J., COLLEEN MARY OTOOLE, J., concur.
[1] Civ.R. 53(E)(4)(c) was modified, effective July 1, 2006.
[2] The present version of the rule, found at Civ.R. 53(D)(4)(e)(ii), allows the trial court to extend interim orders in increments of twenty-days, for good cause shown. The court is no longer limited to two twenty-eight day extensions.
[3] This subsection of Civ.R. 53 was also modified in July, 2006. The present version now provides that "[t]he objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time * * *."
[4] In her objections, appellant challenged the admissibility of this evidence as well evidence that one of her babysitters had a criminal record. However, with respect to her Myspace account, appellant admitted in open court that she wrote these on-line blogs and that these writings were open to the public to view. Thus, she can hardly claim an expectation of privacy regarding these writings. Nor are we willing to find that the court's determination was tainted by its consideration of evidence regarding the babysitter's criminal record since admission of this evidence does not rise to plain error. *Page 1